MATTER OF DE ANDA

In Disbarment Proceedings

A-23038108

*Decided by Board April 17, 1979*
*Approved by Attorney General June 22, 1979*

(1) Six-month suspension from practice before the Immigration and Naturalization Service and the Board of Immigration Appeals ordered based on attorney's unexplained failure to appear at two successive hearings scheduled so that he could apply for discretionary relief on behalf of his client and based on his failure to properly discharge his duty as an attorney to his client.

(2) Attorney's unexplained failure to appear at successive scheduled hearings amounted to "contumelious [and]... obnoxious conduct" within the meaning of 8 C.F.R. 292.3(a)(11).

(3) Failure to hold a hearing in connection with the disciplinary proceedings did not violate attorney's procedural rights where he had full opportunity to request a hearing, but declined to respond to the notice to show cause, and where he was given adequate notice of the charges and evidence on which the disciplinary action was ultimately taken.

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

## BEFORE THE BOARD
(April 17, 1979)

This case is before us pursuant to the provisions of 8 C.F.R. 292.3 relating to the suspension or disbarment of attorneys and representatives of accredited organizations from practice before the Immigration and Naturalization Service and this Board. The respondent is an attorney admitted to practice in several courts.[1] His practice includes cases before the Service and the Board.

On December 18, 1978, the Regional Commissioner of the Service's Western Regional Office commenced disbarment proceedings against the respondent by serving him by registered mail with a copy of

[1] A "Notice of Appearance as Attorney or Representative" (Form G-28) in the record before us indicates that the respondent is a member of the California State Bar and the Federal District Bar.

written charges and a notice to show cause why a motion seeking his disbarment should not be made to this Board.

The notice letter informed the respondent of the following 30 factual allegations:

(1) that, on February 7, 1978, you filed Form G-28 as attorney of record for [a named alien];

(2) that, on February 7, 1978, you appeared as counsel for [that alien] in a deportation proceeding before Immigration Judge Henry J. Scroope, Jr.;

(3) that, on February 7, 1978, you admitted all of the allegations and the charges set forth against your client, on his behalf;

(4) that, on February 7, 1978, you made an application for suspension of deportation on behalf of your client, pursuant to section 244(a) of the Immigration and Nationality Act; [2]

(5) that, on February 7, 1978, you requested ten days to file an application on your client's behalf;

(6) that, on February 7, 1978, Immigration Judge Henry J. Scroope specifically advised you that the application and supporting documents were required to be filed by February 17, 1978;

(7) that, on February 7, 1978, Immigration Judge Henry J. Scroope advised you that if you failed to file the papers by February 17, 1978, he would make a decision on the record, and you indicated that you so understood that to be the result if you failed to file the necessary documents;

(8) that, you failed to file the application and required documents by February 17, 1978;

(9) that, on August 30, 1978, the deportation proceeding was recommenced before Immigration Judge Jay Segal;

(10) that, August 30, 1978, you indicated that you did not have the application;

(11) that, you indicated on August 30, 1978, that you had all of the material ready to file and that you would file it that week;

(12) that, on August 30, 1978, you were given by Immigration Judge Jay Segal until September 7, 1978, at 1:00 p.m. to submit the application;

(13) that, on August 30, 1978, you were advised by Immigration Judge Jay Segal that you should have all the documents and be ready since the application would be heard at that time;

(14) that, on August 30, 1978, you indicated that you understood that the hearing would be resumed on September 7, at 1:00 p.m., and that if you or the respondent were not present at that time, the

---

[2] The respondent indicated a desire to file an application for suspension of deportation on behalf of his client.

application would be denied for lack of prosecution;

(15) that, on August 30, 1978, you did not advise the Immigration Judge of any scheduling conflict which would indicate that September 7, 1978 was an inconvenient date, the record indicates instead that you thanked him for the new hearing date;

(16) that, on September 7, 1978, you failed to appear for the rescheduled deportation proceeding;

(17) that, on September 7, 1978, your brother appeared with the respondent to indicate that you were outside of the country;

(18) that, on September 7, 1978, Immigration Judge Jay Segal reset the hearing to provide your client with one further opportunity to submit the application for suspension of deportation, to September 18, 1978, at 1:00 p.m.;

(19) that, on September 7, 1978, your client was advised that if he desired legal representation he should have his attorney present with him;

(20) that, on September 7, 1978, your client was advised that no further continuances would be given to him to permit you to appear or to file the application on his behalf and that a decision would be made on the record;

(21) that, on September 7, 1978, a notice was hand-delivered to your brother to be delivered to you on Form I-293, to advise you of the rescheduled hearing date of September 18, 1978, at 1:00 p.m.;

(22) that, at 2:00 p.m., on September 18, 1978, Immigration Judge Jay Segal commenced the continued deportation proceeding;

(23) that, at 2:00 p.m., on September 18, 1978, your client advised Immigration Judge Jay Segal that he did not have the application with him;

(24) that, on September 18, 1978, your client indicated that he had spoken to you, and had been in your office until 12:00 noon on that date;

(25) that, on September 18, 1978, at 2:00 p.m., your client indicated that you had advised him to go from your office to the Immigration Court and to wait for you, that you were on your way over;

(26) that, on September 18, 1978, at 2:00 p.m., your client advised Immigration Judge Jay Segal that he had called your office and had been advised that you were on your way to the Immigration Court;

(27) that, on September 18, 1978, at 2:00 p.m., Immigration Judge Jay Segal further adjourned the hearing for thirty minutes, to await your appearance;

(28) that, on September 18, 1978, at 2:35 p.m., you had still failed to appear;

(29) that, on September 18, 1978, at 2:35 p.m., the Immigration Judge required your client to proceed with his deportation proceedings without counsel due to your failure to appear as scheduled;

(30) that, on September 18, 1978, Immigration Judge Jay Segal denied your client's request for suspension of deportation for lack of prosecution, due to your failure to file the required application on his behalf.

The Regional Commissioner informed the respondent that he considered his actions in this case to have been "contemptuous and insulting to the Immigration Court" and of a nature that if they had taken place in a federal or California state court could have resulted in a contempt citation. See 8 C.F.R. 292.3(a)(11).

The Regional Commissioner further informed the respondent that he considered his repeated failure to file the suspension application and his failure to appear at the hearings on September 7 and September 18, 1978, to have deprived his client of effective legal representation. The Regional Commissioner submitted that the respondent's failure to properly discharge his duty as an attorney to his client constituted a ground for suspension or disbarment in the public interest.[3]

The respondent was advised that he had 30 days from December 18, 1978, to show cause why disbarment proceedings should not be instituted. He was also informed that after an answer was made and the matter was at issue, he could request a hearing before a representative of the Regional Commissioner. If no answer was received within three days after the expiration of the 30 days provided to respond, the respondent was informed, any defense to the charges would be deemed waived. Respondent was further advised that if for any reason he needed additional time to show cause why proceedings should not be commenced, he could request it from the Regional Counsel. A copy of the hearing transcript in the deportation case giving rise to proceedings and copies of documents relating to that case were forwarded with the "show cause" letter.

The respondent neither answered the "show cause" letter, nor requested additional time to do so. Accordingly, on February 20, 1979, the

---

[3] The 15 grounds for suspension or disbarment set forth in 8 C.F.R. 292.3(a) do not "establish the exclusive grounds for suspension or disbarment in the public interest."

record was transmitted to the Board by the Regional Commissioner with the recommendation that the respondent be suspended from practice before the Service and the Board for a period of 6 months. A copy of the transmittal letter was forwarded to the respondent by certified mail.

Under the circumstances of this case, we find that the respondent's failure to appear at the scheduled deportation hearings on September 7, 1978, and September 18, 1978, was "contumelious [and] . . . obnoxious conduct" within the meaning of 8 C.F.R. 292.3(a)(11). The September 7, 1978 hearing was scheduled solely because of respondent's statements of record on August 30, 1978 that he still intended to file a suspension application on his client's behalf, that he had "all of the material ready to file," and that he would do so "[that] week." Because of these representations, the immigration judge withheld disposition of the case and scheduled a further hearing even though counsel had already failed to file the suspension application for a period of over 6 months. The record verifies that counsel acknowledged the time and date of the hearing and thanked the immigration judge for his action. Nonetheless, without having previously noted any scheduling conflict or requesting any postponement or rescheduling of the hearing, the respondent herein failed to appear at the time and place scheduled for the hearing. Other than sending his brother to advise the immigration judge that he was "out of the country," the respondent offered no excuse or explanation for his failure to appear. No explanation to date has been offered for this conduct.

On the second occasion, less than 2 weeks later, respondent again failed to appear with his client at a scheduled hearing (although clearly aware of his client's desire that he be present) without having previously informed the immigration judge of an inability to do so or subsequently offering any excuse for his action. At no time was the immigration judge ever informed that it had been decided not to file the suspension application. Moreover, based on respondent's representation on August 30, 1978, and his client's statement on September 18, 1978, it was clear such a decision had not been made.

Under these circumstances, we must conclude that the respondent had the ability to appear at the two hearings that were scheduled based on his representations regarding the filing of the suspension application, but simply elected not to do so. We find that respondent's unexplained conduct in this regard could have been punishable as contempt had it occurred in judicial proceedings and that it falls within he proscription of 8 C.F.R. 292.3(a)(11). *See In re Niblack,* 476 F.2d 930 (D.C. Cir. 1973); 18 U.S.C. 401; *Chula v. Superior Court,* 368 P.2d 107 (Cal. 1962); *Lyons v. Superior Court,* 278 P.2d 681 (Cal. 1955); section 1209 of the California Civil Code of Procedure. *See also In re*

*Farquhar,* 492 F.2d 561 (D.C. Cir. 1973). The respondent's objectionable behavior in this regard clearly obstructed the orderly and timely administration of the immigration laws.

We further find that respondent's failure to properly discharge his duty as an attorney to his client constitutes a separate ground for action under 8 C.F.R. 292.3. Seven months after respondent first advised an immigration judge that he intended to file a suspension application on his client's behalf he still had neither done so nor informed the immigration judge of a decision not to do so. As noted, he had in fact specifically informed the immigration judge on August 30, 1978, that he still intended to file such an application and would do so "[that] week."[4] Some 19 days and two hearings later, he still had taken no action even though he had been warned on three occasions that such inaction on his part would lead to denial of the application for lack of prosecution. We find this unexplained inaction on respondent's part, combined with his failure on two occasions to appear on his client's behalf,[5] to be entirely unacceptable conduct for an alien's attorney of record and sole representative.

Having reached these conclusions, and considering respondent's failure to offer any matters in explanation of mitigation, we find no reason not to approve the Service's recommendation that the respondent be suspended from practice before the Immigration and Naturalization Service and this Board for a period of 6 months.

**ORDER:** The respondent is suspended from the practice of law before the Immigration and Naturalization Service and before the Board of Immigration Appeals for a period of 6 months.

**FURTHER ORDER:** The record is certified to the Attorney Gerneral for final disposition, and the foregoing order is stayed pending such disposition.

## BEFORE THE ATTORNEY GENERAL
(June 22, 1979)

This matter is before me pursuant to 8 C.F.R. 292.3(b), which provides for review by the Attorney General of decisions of the Board of

---

[4] The record establishes that as of the date of the immigration judge's order, the respondent's client was still desirous of applying for suspension of deportation and that neither he nor the respondent determined that such relief should not be pursued.

[5] The record indicates that the respondent's non-English speaking client desired his presence and was in need of his assistance. Respondent's action in failing to appear at the September 18, 1978, hearing was particularly aggravated as the record reflects that he had advised his client as of 1 hour before the hearing that he would be present and that he retained the documents relating to the suspension application in his possession.

Immigration Appeals (BIA) for suspension or disbarment of attorneys from further practice before it and the Immigration and Naturalization Service (INS). In a decision dated April 17, 1979, the BIA recommended that the respondent, Daniel De Anda, be suspended from such practice for 6 months. After review of the record, I approve its decision.

I

On December 18, 1978, the Regional Commissioner of the Western Regional Office of INS commenced disbarment proceedings against Mr. De Anda, an attorney admitted to practice before the federal and state courts in California whose practice includes cases before the INS and the BIA. He was served by registered mail with a copy of written charges against him, and with a notice to show cause why a motion seeking his suspension or disbarment should not be presented to the BIA.

The basis of the charges was that he had failed to appear at scheduled hearings to present an application for suspension of deportation on behalf of his client. On August 30, 1978, Mr. De Anda had indicated to the immigration judge that he would have it ready within a week; as a result, he was given until September 7, 1978, to submit the application. De Anda was told that if he did not appear on September 7, the application would be denied for lack of prosecution. On September 7, 1978, De Anda failed to appear for the rescheduled deportation proceeding. The hearing was rescheduled for September 18, 1978. On that date, De Anda's client appeared alone, and informed the judge that he had just spoken with De Anda, who told him to proceed to court to await his appearance. After a short recess, De Anda still had not appeared, and the judge required De Anda'a client to proceed without counsel. The request for suspension of deportation was denied.

The Regional Commissioner informed De Anda that his behavior had been "contemptuous and insulting to the Immigration Court," and of a nature that, had it occurred in a federal or state court in California, would constitute a basis for a finding of contempt. Further, he was informed that his failure to act as a representative of his client was an additional basis for suspension from practice.

De Anda did not answer or in any way respond to the notice.[1] By

---

[1] De Anda had been advised in the notice that he had 30 days to show cause why suspension or disbarment proceedings should not be instituted against him. He was told that he could request a hearing after filing an answer, and that if no answer were received within 3 days after the expiration of the 30-day period, "any defense to the charges shall be deemed waived." He was also informed that if he required additional time to show cause why proceedings against him should not be commenced, he could

memorandum dated February 20, 1979, the record in the case was forwarded by the Regional Commissioner to the BIA, with the Commissioner's recommendation that De Anda be suspended from practice for 6 months. A letter dated February 27, 1979, was sent to De Anda informing him that the record of his case had been forwarded to the Chairman of the BIA with a recommendation of suspension for 6 months.[2]

In view of the uncontested charges and underlying record, the BIA found that De Anda's actions amounted to "contumelious [and]... obnoxious conduct" within the meaning of 8 C.F.R. 292.3(a)(11).[3] The Board concluded that the conduct toward the immigration judge would justify a finding of contempt both in federal and state courts, and that the conduct toward his client constituted an additional ground for disciplinary action.

## II

Title 8 C.F.R. 292.3(a)(11) provides that suspension from practice before the INS and BIA is an appropriate punishment for one who "engaged in contumelious or otherwise obnoxious conduct with respect to a case in which he acts in a representative capacity, which in the opinion of the Board, would constitute cause for suspension or disbarment if the case was pending before a court, or which ... would constitute a contempt of court...." The failure to obey the direction of a court to appear at a hearing is clearly conduct that would justify a finding of contempt in federal court and in the courts of California. See In re Niblack, 476 F.2d 930 (D.C. Cir. 1973); Chula v. Superior Court, 18 Ca. Reptr. 507, 368 P.2d 107 (1962).

In the present situation, the record supports the BIA's finding that De Anda failed to appear at two scheduled hearings without providing any excuse or explanation, and in circumstances indicating that he had the ability to appear. That alone establishes, in my view, that the determination of cause for suspension from practice should be approved. In addition, it is relevant that the scheduled hearings at which De Anda failed to appear were called for the purpose of considering an application to be made on behalf of his client for the suspension of deportation. The failure of De Anda to appear and make such an application, thus putting his client's rights directly in jeopardy,

request it from the Regional Counsel.

[2] The record includes signed Post Office receipts confirming that the letters of December 18, 1978, and of February 27, 1979, were received.

[3] "Contumelious" conduct, as the Regional Commissioner explained to De Anda in the letter of December 18, 1979, refers to behavior that is "haughtily contemptuous or insulting."

further supports the finding of cause for suspension "in the public interest."[4]

There is no indication that De Anda's procedural rights were violated because there was no hearing in this case. He had a full opportunity for a hearing, but none was held because he never responded to the notice to show cause. The December 18, 1978, notice provided De Anda with adequate notification of the charges against him and of the evidence underlying its issuance. *Cf. Hess & Clark, Division of Rhodia, Inc.* v. *FDA,* 495 F.2d 975, 983-84 (D.C. Cir. 1974). Moreover, the issues identified in the notice were the ones on the basis of which administrative action proceeded. *Cf. L&M Industries, Inc.* v. *Kenter,* 458 F.2d 968, 971 (2 Cir. 1972).

Accordingly, I approve the order suspending respondent De Anda from practice for 6 months before the INS and the BIA. The period of suspension is to commence on the date of this decision.

---

[4] The specific grounds for suspension listed in 8 C.F.R. 292.3(a) are not "the exclusive grounds for suspension or disbarment in the public interest."